WILLIAMSON SMITH *v.* THOMAS J. IVEY AND THE CITY OF NEW ORLEANS.

Where the loss of a flatboat, loaded with coal, at the flatboat landing in New Orleans, is shown to have been the result of carelessness or inexperience on the part of the owner, or by reason of the want of proper crew, or want of skill on the part of the crew, neither the harbor master or the city of New Orleans are responsible for the loss.

APPEAL from the Sixth District Court of New Orleans, *Howell,* J. *McPheeters,* and *Bonford & Finney,* and *Michel,* for appellants. *G. A. Breaux,* and *Singleton & Clack,* for appellee.

TALIAFERRO, J. The plaintiff sues the City of New Orleans and Thomas J. Ivey, a harbor-master, for $2,871 20, the value of a large quantity of coal, and the flatboat that contained it; both of which, petitioner avers, were totally lost from the sinking of the boat, caused by the illegal and improper management, by the harbor-master, of the flatboat landing, and by his gross negligence and inattention to his duties.

The defendants admit that plaintiff's boat was sunk; but deny that the accident happened through their fault. On the contrary, they aver that it arose from the plaintiff's own imprudence; from his want of the proper attention to the safety and security of his boat, and from the want of skill and judgment in those to whom he entrusted its management. They aver that they are in no manner responsible for the plaintiff's boat, and pray to be dismissed.

This case was before two juries. The first was unable to agree upon a verdict; the second found for the plaintiff, and judgment was rendered accordingly for the amount claimed. The defendants have appealed.

From the record we gather the following facts :

That the flatboat landing extends from Second to Fifth streets; that, at the time the accident happened, two or three ships were lying at this landing; about half the length of the vessels extending above the line of Second street. That plaintiff's flatboat, heavily laden with coal, was brought to this landing by a tow-boat, which, being unable (for want of room) to land the coal boat against the wharf, left her on the outside of several flatboats, lying two or three tiers deep. That the river at the time was quite high, and the current very strong close to the shore. That the coal boat, lying outside the other boats, was exposed to the great force of

the current, and was insecure, although fastened by a bow line and a stern line, both of which extended to the shore.    That, after lying in that situation about half an hour, three men in the employ of plaintiff undertook to drop the coal boat down below the flatboats she was lying against, to an open space between these boats and the ships, in order to lay the coal boat along side of the wharf.    That, in this attempt to move the coal boat, her bow line parted, and, being still held by the stern line, she swung around and was swept down with great violence against the bow of one of the ships.    By the collision the boat was stove, and soon after sunk.

Two or three witnesses say that it was not usual for flatboats to be unloaded at that part of the wharf where it was attempted to place the coal boat, and that it was a common thing for ships to lie there.    The reason assigned was, that it was impracticable to unload flatboats there, except during a high stage of water.

The defendants show that, by a city ordinance, the harbor-master was clothed with discretionary power to assign for the use of ships such wharves within the boundary, between First and Sixth streets, as it might be impracticable to unload flatboats at.    But, it appears by the City Ordinance, No. 4007, passed in June, 1858, that this discretionary power was not continued in the harbor-master; for the last section of the act provides that "all ordinances and parts of ordinances, rules and regulations, that are contrary to the provisions of this ordinance be and the same are hereby repealed," etc.

The plaintiff seems to base his claim for damages mainly on the ground that the ships that lay at Second street encumbered the landing, and obstructed the safe passage of boats to the wharf.    That, being out of their proper place, and lying in the position they occupied, the collision which occurred was inevitable.

A careful inspection of the record does not enable us to say that the evidence sustains his position.    We think it reasonable to conclude, that the disaster was the result rather of his own want of prudence and foresight, and the want of judgment and skill in those he had in charge of his boat, than delinquency in duty of the city authorities.    We are satisfied that, had a sufficient force been employed, and proper direction given to that force, the coal boat might safely have been turned around to the wharf.    It is fully shown that only three men, and those awkward and unskillful, were engaged in an [operation requiring three times the number, and possessing, also, dexterity and judgment.

The plaintiff, in our judgment, has not made out a case entitling him to damages.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed.    It is further ordered, that judgment be, and the same is hereby rendered, in favor of the defendants, the plaintiff to pay costs in both Courts.